UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID S. MATHEWS,

      Plaintiff,

         v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

      Defendant.

Civil No. 06-6091-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Plaintiff David S. Mathews brings this action for judicial review of a final administrative

decision of the Commissioner of the Social Security Administration ("Commissioner") that

---

     [1]    On February 12, 2007, Michael J. Astrue became Commissioner of Social Security
and he should be substituted in these proceedings as such.  42 U.S.C. § 405(g); Fed. R. Civ.
P. 25 (d)(1).

1  - OPINION AND ORDER

denied plaintiff's application for Supplemental Security Income payments (SSI). *See generally* 42 U.S.C. §405(g) and §1383(c)(3).

Plaintiff protectively filed his current application for SSI on March 12, 2002. Tr. 21. He alleged disability as of either June 1, 1986, or April 1998. Tr. 21, 469. His alleged medical issues include problems with his back, knees, feet, hips, left eye blindness, carpal tunnel syndrome, and anxiety. Tr. 469. Plaintiff's application seeks SSI as of March 2002, the month he filed that application. *See* 20 C.F.R. §§ 416.330, 416.335; *see also* Social Security Ruling (SSR) 83-20.

His application was denied initially and upon reconsideration. Tr. 388-89. An Administrative Law Judge (ALJ) conducted a hearing in early January 2005. Testimony was presented from three witnesses: plaintiff, who was represented by an attorney; plaintiff's mother, Mildred Mathews; and a vocational expert (VE), Kathleen O'Gieblyn. Tr. 1159-1203.

The ALJ issued a decision finding that plaintiff could perform a significant number of jobs that existed in the national economy. Tr. 21-33. The Appeals Council denied plaintiff's request for review, rendering the ruling the Commissioner's final decision. *See* 20 C.F.R. § 416.1481, 422.210. Plaintiff now seeks judicial review.

## LEGAL STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied. If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude SGA. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.  However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act.  20 C.F.R. § 404.1520(f)(1).  If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility.  20 C.F.R. §§  404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court weighs all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).  The

Commissioner, not the reviewing court, resolves conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence will be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA as of his alleged disability onset date. Tr. 23.

At step two, the ALJ found that plaintiff suffered severe impairments, including lumbar and cervical degenerative disc disease, residuals of fractures, and left eye blindness. Tr. 23.

At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 23. Plaintiff's RFC was construed as allowing him to perform work that does not require him to lift more than ten pounds, sit for six hours, stand or walk for two hours, only occasionally forcefully use his lower extremities, and that does not require binocular vision. *Id*.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work. Tr. 30.

At step five, the ALJ found that, based on plaintiff's RFC, plaintiff could perform work existing in significant numbers in the national economy, and referred to positions identified by the VE: small products assembler and sedentary cashier. Tr. 31.

5  - OPINION AND ORDER

**BACKGROUND**

The relevant background has been presented thoroughly by the parties and in the ALJ's decision, and is summarized here.  Plaintiff, forty-six years old on the date of the ALJ's decision, has a high school education and one completed one year of college.  Tr. 31, 474.  Plaintiff's past work experience includes an automobile service station attendant, door assembler, agricultural equipment assembler, industrial equipment assembler, and an automobile mechanic.  Tr. 1195-96.  The ALJ reviewed plaintiff's medical issues carefully, and specific medical facts and background will be addressed as necessary in conjunction with the parties' legal arguments.

**QUESTIONS PRESENTED**

Plaintiff contends that the ALJ erred in failing to include plaintiff's mental limitations and carpal tunnel symptoms as severe impairments, and also failed to establish sufficiently that plaintiff can perform other work in the national economy.

**ARGUMENT**

> **1.     Did the ALJ evaluate plaintiff's allegations regarding mental impairments and carpal tunnel conditions?**

As noted above, at "step two" of the five-step sequential evaluation process, the Commissioner determines whether a claimant has a medically severe impairment or combination of impairments.  An impairment will only be found severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c); SSR 96-3p; ("an impairment that is 'not severe' must be a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities").  The term "basic work activities" is defined as the abilities and aptitudes necessary to do most jobs.  20 C.F.R. § 404.1521(b).

6  - OPINION AND ORDER

After a claimant has shown that he or she suffers from a medically determinable impairment, the claimant must then prove that these impairments or their symptoms affect the ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159-1160 (9th Cir. 2001). Mild psychological impairments are considered non-severe. 20 C.F.R. § 416.920a(d)(1); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996 as amended).

Plaintiff contends that the ALJ erred because he determined that plaintiff's mental limitations were mild and did not cause work-related limitations. In so ruling, the ALJ referred to the opinion of reviewing physician Paul Rethinger, Ph.D., who acknowledged that plaintiff had medically determinable dysthmic and panic disorders, but that these caused only mild work-related limitations. Tr. 25, 27, 888-901.

A non-examining physician's opinion may constitute substantial evidence as long as other evidence in the record supports those findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews*, 53 F.3d at 1041; *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989).

The ALJ's findings were also bolstered by legitimate inferences that the evidence of plaintiff's activities indicated nothing more than minimal mental limitations. Tr. 27, 29-30. No evidence of relevant interference occurring with plaintiff's interaction with the public was presented. Tr. 27. Plaintiff testified that he left his last job in March 2002 because of an inability to walk and "hustle," not because of mental issues. Tr. 1165-66.

Plaintiff's daily activities, as evaluated by the ALJ, were limited only by physical impairments, not his mental impairments. Tr. 27.

Doctor Rethinger's assessment of mild mental limitations was consistent with aspects of plaintiff's related testimony, relied upon by ALJ, in which plaintiff de-emphasized his bouts with

panic and agoraphobia and cited improvement with medication. Tr. 27 (referring to plaintiff's testimony that "Effexor works pretty good for the depression and the anxiety and panic attacks," at Tr. 1185).

The ALJ also referred to statements made by plaintiff that he did not feel depressed, and noted that plaintiff's condition was controlled with medication. Tr. 26-27. Although plaintiff further testified that he was affected daily by depression and anxiety, Tr. 1186, the ALJ observed that plaintiff nevertheless elected to remain untreated for mental conditions. Tr. 27. Specifically, the ALJ referred to plaintiff's failure to keep any scheduled appointment with his counselor between October 2001 and October 2002. Tr. 27, 770. Declining to seek treatment for alleged conditions is a legitimate factor to be considered when evaluating subjective complaints regarding those conditions. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ inferred that plaintiff may have sought treatment for purposes of "obtaining medications such as Klonopin, Xanax." Tr. 27. This court concludes that such an inference is drawn reasonably from the evidence of record.

Plaintiff's challenge to this aspect of the ALJ's ruling relies heavily upon his Global Assessment of Functioning (GAF) score of 55, which was assessed by Lisa Sjodin, M.D. Tr. 712. Such scores describe an individual's psychological, social, and occupational functioning. A GAF score of 51 to 60 indicates an individual with moderate symptoms (such as flat affect, circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning.

The ALJ determined that plaintiff lacked credibility. Tr. 27-30. Specifically, the ALJ referred to plaintiff's inaccurate description of his alcohol and drug use. Tr. 29. A GAF

assessment is based upon either the individual's symptoms or functional impairments. The ALJ correctly considered the fact that Dr. Sjodin discounted the possibility that plaintiff was exaggerating. Tr. 25. The ALJ incorporated plaintiff's credibility in evaluating the weight to give plaintiff's symptom reporting. Just as significantly, a physician's opinion that is derived from a plaintiff's subjective complaints and the results of testing that are within plaintiff's control, may be given the same weight as plaintiff's credibility. *Tonapetyan*, 242 F.3d at 1149.

In addition to considering plaintiff's credibility in weighing the significance of Dr. Sjodin's GAF assessment, the ALJ also noted that Dr. Sjodin opined that plaintiff's distress appeared to be mild, he demonstrated good concentration, and his mental status was stable. Tr. 25.

This court concludes that plaintiff failed to establish that his alleged mental impairments affected his ability to perform basic work activities. Because they caused only mild work-related restrictions, the ALJ correctly determined that plaintiff's mental impairments were not severe.

Similarly, plaintiff's challenge regarding the ALJ's evaluation of his alleged decreased sensation in his hands and forearms is without merit. Plaintiff's claim that the ALJ erred by overlooking that plaintiff has suffered "paresthesias of his hands and forearms" throughout "the adjudicatory period" is rejected. *See* Pl.'s Mem. at 19.

Plaintiff underwent a surgical carpal tunnel release in 1997. Tr. 981. In 2001, he reported pain radiating down his arms into his hands and paresthesias, as well as partial numbness in both hands. Tr. 606. Doctor Mundall, a neurologist, diagnosed plaintiff with bilateral arm pain and paresthesias, most likely secondary to cervical disease, and possible

mild carpal tunnel syndrome.  Tr. 606.  He prescribed a splint and told plaintiff that "he may simply have to wait a little longer for improvement of his symptoms."  Tr. 607.  Subsequently, Chris Miller, M.D., classified plaintiff's carpal tunnel syndrome signs as reported to Dr. Mundall as "mild."  Tr. 24, 569.  During a follow-up examination on July 26, 2001, plaintiff made no complaints of arm pain to Dr. Mundall.  Tr. 595.

The ALJ acknowledged that later that year, plaintiff described suffering "cramps in his hands after using them for two minutes."  Tr. 25, 715.  Doctor Gregory Taylor, M.D., characterized plaintiff's cramps as "severe debilitating cramping problems."  Tr. 715.

However, subsequent to this, plaintiff began working as a gas station attendant, pumping gas and cleaning.  Tr. 502-503.  Plaintiff attributed his failure at this employment to an inability to walk and "hustle" as required, not due to alleged hand limitations.

In 2005, plaintiff's pain and paresthesias worsened. Tr. 1155.  Other hand and arm limitations arose "very abruptly" in late 2005, after the ALJ's ruling.  *Id*.  While impairments may have arisen or increased in severity subsequent to plaintiff's SSI application at issue here, the ALJ's decision correctly considered the evidence before him relating to the period in question.  Plaintiff's allegations of new or worsened impairments fail to provide a basis for rejecting the ALJ's conclusions.

Those conclusions were derived from a fair evaluation of the evidence presented.  Doctor Mundall noted that plaintiff had "normal strength in his arms and hands" and symmetric reflexes, albeit with decreased sensation in plaintiff's index finger and thumb.  Tr. 607.  Plaintiff's electromyogram (EMG) showed "no evidence of denervation."  Tr. 24, 607.  All relevant evidence before the ALJ was reviewed by Martin Kehrli, M.D., on May 29, 2003, who found

10 - OPINION AND ORDER

that plaintiff had no limitations in manipulation, including handling and fingering.  Tr. 25, 905.

These findings are in accord with conclusions drawn by Sharon Eder, M.D., who reviewed the

record on November 9, 2001.  Tr. 738-39.  This court concludes that the ALJ correctly

considered plaintiff's hand and forearm conditions.

> **2.      Did the ALJ determine plaintiff's ability to perform other work correctly?**

The ALJ determined that plaintiff was unable to perform any past relevant work, and

therefore properly addressed whether other work existed in significant numbers in the national

economy that plaintiff could perform.  Tr. 30-31.  The ALJ took testimony from a VE for this

purpose.  This was proper.  *See Tackett*, 180 F.3d at 1099.

Plaintiff complains that the hypothetical question posed by the ALJ to the VE failed to

include all of the limitations that were established by the record.  Specifically, plaintiff contends

that the hypothetical question to the VE omitted mental and sensory limitations.

As established above, this court has reviewed the ALJ's analysis of the relevant medical

evidence and of plaintiff's RFC and concludes that the analysis is supported by substantial

evidence.  Similarly, the hypothetical questioning presented to the VE, and the ALJ's subsequent

interpretation of the testimony elicited from the VE, was proper.  *See Magallanes v. Bowen*, 881

F.2d 747, 756-57 (9th Cir. 1989) (an ALJ is not bound to accept as true any restrictions

presented in a hypothetical question propounded by a claimant's counsel, but may choose to

accept these restrictions if they are supported by substantial evidence).  The hypothetical

questioning submitted to the VE was consistent with the objective medical evidence presented.

This court concludes that the RFC finding and the hypothetical questioning posed to the

vocational expert appropriately included only limitations "based on medical assumptions

supported by substantial evidence in the record that reflect[ed] all the claimant's limitations."

*Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citation omitted).  In response to this

proper questioning, the VE identified thousands of sedentary jobs that could be performed by a

person with plaintiff's RFC, including small products assembler and cashier.  Tr. 1196-98.

## CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct

legal standards and are supported by substantial evidence in the record.  The final decision of the

Commissioner denying plaintiff David S. Mathew's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this ___12___ day of July, 2007.


    /s/ ANCER L. HAGGERTY
        ANCER L. HAGGERTY
     United States District Judge

12 - OPINION AND ORDER